### 45583. INSURANCE COMPANY OF NORTH AMERICA et al. v. ROSS.

DEEN, Judge. 1. Assuming the death certificate of the deceased employee in this workmen's compensation case not to have been admissible in evidence over the objection made, there was yet

ample uncontradicted evidence to establish that the death arose out of and in the course of his employment. Three witnesses testified that as he plugged in a deep freeze unit into an electric circuit he screamed, began shaking, and could not remove his left hand from the freezer; that a fellow employee jerked the electric fixture from his hand with the end of a broom and he thereupon fell over in a coma. He was dead on arrival at the hospital. Evidence of statements by the deceased that he had epilepsy, in the absence of any evidence to suggest a seizure of this nature at the time of the accident, is no cause for reversal of the award in favor of the decedent's mother.

2. Notice of injury is sufficient when it puts the employer on notice of the injury so as to enable the employer to make further investigation if it sees fit to do so. *Railway Express Agency, Inc. v. Harper,* 70 Ga. App. 795 (1) (29 SE2d 434). Where the electrocution took place during working hours and was witnessed by fellow employees, the police were immediately notified, an ambulance was sent, and the employee died on the way to the hospital, there is sufficient circumstantial evidence in the absence of any indication to the contrary that the employer "had knowledge of the accident" under the exception to the provisions of *Code* § 114-303 requiring oral or written notice. In such case the accident itself constitutes the notice. If the employer is seriously contending that the accident to its employee, working during daylight hours in a school lunch hour and suffering electrocution in the presence of at least three fellow employees which resulted in death very shortly thereafter, was unknown to it, or its agents and representatives, the burden was on the employer to present some evidence to this effect, since it can hardly be conceived under these circumstances that the tragedy could escape the attention of whatever person happened to be in charge at the time.

3. The claimant's mother testified by deposition that the deceased son lived in a room in the home being purchased by herself and her present husband, Ross, with whom she had entered into a ceremonial marriage; that she was divorced from her first husband and knew this because he told her after serving a felony sentence in the penitentiary that "the law says we are di-

vorced" and that he was marrying another woman. Her son received $50 per week take-home pay; he received his meals at home and gave her something like $20 per week for rent; he would give her more when she asked, which was almost every week because Ross' earnings of $50 per week and her own earnings of the same amount did not cover their expenses and those of Ross' three school-age children who lived with them. He usually gave her an additional $10 or $15. She used the money for rent, food and doctor bills.

On the witness stand the claimant contradicted this testimony in part by admitting that she was not in fact divorced from her first husband. She also stated that her son gave her $45 of his salary each week, that it was not rent, and that she used it for expenses of the house and doctor bills.

It is obvious that the witness was a woman of little or no education. There is no real contradiction in her testimony about her marital status except for the legal conclusion involved—she had gone through a marriage ceremony with Ross and thereafter lived with him as husband and wife upon being told by her first husband that she was free to do so, obviously without questioning the legal complexities involved. A more serious contradiction involves whether $20 per week of the amounts turned over by her son were or were not rent, but on both occasions she averred that additional money was received weekly. The arrangement for contributions to her by her son appears in both cases to have been based more on her needs than on any fixed contract between them, and the allocation of funds to be an expression of her own thinking rather than any verbalized arrangement. The hearing director, balancing the probabilities, found that the deceased contributed to his mother's support in the sum of $25 per week. Whether the partners were married or not (legally they were not) Ross provided to the extent of his ability and the claimant did not in any factual sense maintain a separate establishment as head of a household. "Dependency, under the Workmen's Compensation Act, does not depend on whether the alleged dependent could support herself without decedent's earnings, or so reduce her expenses that she would be supported independently of his earnings, but

whether she was supported in whole or in part by such earnings, under the circumstances indicating an intent on the part of the deceased to furnish such support." *Insurance Co. of N. A. v. Cooley,* 118 Ga. App. 46 (1) (162 SE2d 821). Such intent appears from the testimony here. The award is supported by evidence, and its affirmance by the Judge of the Superior Court of DeKalb County is affirmed by this court.

*Judgment affirmed. Hall, P. J., and Evans, J., concur.*

SUBMITTED SEPTEMBER 16, 1970—DECIDED OCTOBER 15, 1970—REHEARING DENIED NOVEMBER 6, 1970—

Smith, Cohen, Ringel, Kohler, Martin & Lowe, Williston C. White, for appellants.
Phillip Slotin, for appellee.